IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Floyd Poole, | Civil Action No. 2:11-3115-DCN-BHH |
| Plaintiff, | |
| vs. | |
| Michael J. Astrue, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | |
| Defendant. | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Floyd Poole, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 34 years old on his alleged disability onset date of February 4, 2010. (R. at 18, 25.) The plaintiff claims disability due to chronic back pain and depression. (R. at 20, 142.) The plaintiff did not graduate from high school; at the hearing before the Administrative Law Judge ("ALJ"), the plaintiff testified that he stopped attending school after the ninth grade. (R. at 55-56, 142.) He has past relevant work as a material handler. (R. at 25.)

The plaintiff filed an application for DIB on February 9, 2010. (R. at 18.) His application was denied initially and on reconsideration. *Id.* An ALJ held a hearing on April 6, 2011. (R. at 18.) In a decision dated May 6, 2011, the ALJ found that the plaintiff was

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

not disabled. (R. at 18-26.) The Appeals Council denied the plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)  The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> (2)  The claimant has not engaged in substantial gainful activity since February 4, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> (3)  The claimant has the following severe impairments: chronic back pain and depression (20 CFR 404.1520(c)).
>
> (4)  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant requires a sit/stand option and can never use ladders, ropes, or scaffolds. He should only occasionally use ramps or stairs and should only occasionally stoop, crouch, or crawl. He should avoid even moderate exposure to hazards and is limited to simple, routine repetitive tasks with only occasional public contact and low stress, which is defined as occasional change in the work setting or decisionmaking.
>
> (6)  The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7)  The claimant was born on September 26, 1975 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> (8)  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).
>
> (9)  Transferability of job skills is not material to the determination of disability because using the Medical-

> Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from February 4, 2010, through the date of this decision (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the

Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) assessing his residual functional capacity; (2) not ascribing controlling weight to the opinions of his treating physician; (3) failing to properly assess his credibility; and (4) failing to consider certain new evidence.

The Court will address each alleged error in turn, as necessary.

### I.     Residual Functional Capacity

The plaintiff first contends that the ALJ failed to consider two impairments in making his residual functional capacity (RFC) assessment. Specifically, the plaintiff alleges functional limitations, not considered, from obesity and numbness in his wrists and hands. The "RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p at *1. "To determine the claimant's RFC, the ALJ must consider the relevant medical evidence and other evidence of the claimant's condition in the record, including testimony from the claimant and family members." *Morgan v. Barnhart*, 142 Fed. Appx. 716 (4th Cir. 2005) (citing 20 C.F.R. § 404.1529(c)(3) (2004)).

Critically, when a claimant suffers from multiple impairments, the ALJ must consider their combined effect in determining whether the claimant is disabled. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Hicks v. Gardner*, 393 F.2d 299, 301 (4th Cir. 1968). Congress has explicitly required that "the combined effect of all the individual's impairments" be considered, "without regard to whether any such impairment if considered separately" would be sufficiently severe. 42 U.S.C. § 423(d)(2)(c); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir.1989). As an important "corollary to this rule, the ALJ

must adequately explain his or her evaluation of the combined effects of the impairments." *Walker*, 889 F.2d at 50.

It is an easy thing to affirm the objection. There is no dispute that the ALJ, in fact, cites neither impairment. And, now, the defendant, himself, in response, fails to make any argument in defense of a faulre to mention the hand and wrist numbness. With regards to obesity, the defendant would offer some. He claims that such impairment was necessarily considered insofar as the ALJ admitted to considering the entire medical record, including evidence of back pain.

The Court is generally of the similar view that an ALJ need not be demerited for a failure to cite every piece of evidence. An ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions. *Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004)); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered") (citations omitted). And, contrary to the plaintiff's persistence, a formalistic factor-by-factor recitation of the evidence is simply not required. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also Dryer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ is not required to specifically refer to every piece of evidence in the decision).

But, these impairments are not a piece of evidence, unspecified. They are conditions of the plaintiff. And, to the extent they are simply unnoticed in the decision, the Court is fearful of presuming any consideration, even if, as a general matter, the ALJ professes, as here, to having considered the whole record.

As is common, the defendant suggests that the plaintiff must at least evidence some additional limitations, not included in the RFC, before any such alleged oversights can be considered more than harmless. The plaintiff has done this. With the numbness in

particular, there is evidence of difficulty. (R. at 445-46, 470-71.) This evidence is particularly important to the extent the plaintiff was found to be capable of performing various types of "handling" jobs. (R. at 68-69.)

With regards to the plaintiff's obesity, there is substantial record support. (R. at 207, 216, 324,326, 338, 340, 342, 358, 359, 360, 372, 379, 385, 386, 388, 389, 413, 436, 437, 438, 439, 440, 441, 442, 449, 457.)

It is far from certain that the plaintiff can make his case – that additional limitations are warranted – but, for the complete silence as to these impairments, review seems unadvisable. As the plaintiff reminds, the compounding effects of all such impairments together might create limitation where singularly they do not. The Court is neither trained nor permitted to make its own determination about it. In these instances, the Court does not mean to make extra work for the administration. These records are unmanageably large and various oversight is more than to be expected. At the same time, the undersigned is hesitant to ever manufacture an explanation or simply to conclude that a mistake does not matter.

Remand for more evaluation is recommended.

## II.     Treating Physician

The plaintiff next contends that the ALJ improperly rejected the opinions of his treating physician, Dr. Fitzwilliam King. On February 8, 2010, Dr. King completed a Functional Capacity Questionnaire regarding the plaintiff. (R. at 323.) Dr. King indicated that he had first treated the plaintiff in September 2005. The plaintiff's diagnoses were chronic depression, GI bleed, and chronic back pain. *Id*. He stated these impairments had lasted or were expected to last for 12 months. *Id*. Dr. King stated that the plaintiff could stand/walk and sit a total of 0 to 2 hours each in an 8-hour day and could never lift even less than 10 lbs. in a competitive work situation. *Id*. Dr. King stated that the plaintiff would frequently experience pain severe enough to interfere with the attention and concentration needed to perform even simple work tasks. *Id*. The plaintiff's signs and symptoms included

7

positive straight leg raising test, impaired sleep, depression, sensory loss, and muscle weakness. *Id*. Dr. King estimated that the plaintiff would miss more than 4 days of work per month. *Id*.

The ALJ, however, accorded the opinion little weight.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. A treating physician's opinion may be assigned little or no weight if it is conclusory. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996).

The ALJ's entire analysis was as follows: "**[W]hile the objective evidence of record does show some functional limitation resulting from the claimant's back condition, Dr. King's conclusion of debilitating limitations and restrictions are not consistent with his own findings in treatment notes, including later notes showing improvement in pain with medication as well as observations of a normal gait and station**." (R. at 21 (emphasis added).) This is unacceptably curt. And, in support, even the defendant makes only the plea that "the ALJ should not be required to provide a more detailed analysis." (Def. Brief at 10; see also Def. Brief at 8.) The defendant does not actually point to any justifiable evidentiary basis for the summary conclusion. The Court would remind that this is the opinion of the plaintiff's *treating physician,* at stake, which is being dismissed in one sentence without specificity. Arguably the most essential piece of medical evidence

for which the regulations extend the greatest deference, has been disregarded effectively without explanation. This decision is not alone in this error.

The Court would acknowledge that elsewhere in the opinion the ALJ seemed to be compelled by a January 2011 treatment note that indicated that the plaintiff had a "normal gait, an intact heel and toe stand, and no significant tenderness in parts of the spine upon palpation." (R. at 23.) This note is not expressly cited as any rationale for discounting Dr. King's opinion but may have been an informing piece of evidence. Regardless, the Court could not characterize it as substantial evidence with which Dr. King's opinion is somehow inconsistent. That the plaintiff may have exhibited milder symptoms on any particular visit does not cast some doubt over the longitudinal view of a treating physician relationship and associated opinion. And, indeed, from that same time period there is evidence of chronic back pain, which was not well controlled. (R. at 457-58, 470-71.) The plaintiff has put forward evidence that even as his pain might have improved, as a relative matter, it was still in a debilitating range. (R. at 445-46 (pain at a level 7).) In fact, as noted, the ALJ admitted as much, even as he dismissed the opinion. (R. at 24.)

The Court suspects that routinely ALJs observe claimants whose story is generally unpersuasive to them. And, from their perspective that conclusion may be so obvious that he or she expects that it would be plain on review. But, precisely because this Court sits in an appellate capacity the evidence speaks with more murkiness and the undersigned, by law, focuses mostly on the technical sufficiency of the work done. Although the Court appreciates the time demands on them, the ALJs must find ways to translate, in words, why they find certain conclusions so obvious and dispositive. Their word cannot just be taken for it.

### III.    The Plaintiff's Credibility

The plaintiff lastly contends that the ALJ failed to properly assess the credibility of his subjective complaints of pain and other testimony.

9

The plaintiff testified that he was unable to work due primarily to back pain and that it had not improved since surgery in February 2010. (R. at 56-58.) He stated that he takes prescription pain medication and performs home exercises as treatment for the condition and that the medication helps but makes him light-headed and dizzy. (R. at 59.) On a scale from one to ten, with one being least and ten being most, the plaintiff rated his back pain at an eight. (R. at 58-59.) He testified that the pain radiated down his left leg below the knee. (R. at 59.) He also indicated that his hands are subject to being numb (R. at 61.) He testified that he experiences depression and anxiety (R. at 62), that his family physician is treating him with medication, and that he had not seen a psychiatrist or psychologist (R. at 63). The plaintiff testified that he could not stand or walk for more than ten minutes, sit for more than 45 minutes, or lift more than 15 pounds (Tr. 64).

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id*. at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they

are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The plaintiff does not challenge the ALJ's use of this analytical framework. Indeed, the ALJ acknowledged, and made good application of, it. (R. at 23.) He agreed that the plaintiff had made the necessary showing at the first step. *Id*. At step two, however, he found the plaintiff's allegations "concerning the severity of symptoms and limitations associated with his impairments . . . not fully credible." *Id*. Specifically, he found, concerning the plaintiff's depression, that the plaintiff on various occasions had normal or appropriate affect, was alert and oriented, and in no acute distress. *Id*. The ALJ also noted that the plaintiff had never sought treatment from any mental health professional for depression. *Id*. The ALJ also cited the previously mentioned January 2011 note; the plaintiff's ability to perform some household chores; and a recent MRI showing significantly less stenosis post-discectomy. *Id*.

As the plaintiff complains, the ALJ's reliance on any evidence regarding his affect is almost wholly unreasonable. Simply being alert and oriented or not being in acute distress does not undermine the diagnosis of depression or the plaintiff's testimony about it. Critically, at least one of those observations concerning the plaintiff's affect came from a physician's assistant treating the plaintiff for physical symptoms only. (R. at 470-71.) It was not intended as any comment about the plaintiff's depression.

The Court has already dismissed the January 2011 as substantial evidence of any particular condition. But, the plaintiff pushes back on it even more suggesting that it does not even exist. (R. at 23.) This is a reasonable position insofar as neither the ALJ nor the defendant's brief make any citation to it. The only medical record from that month are from the physician's assistant, Joseph McTavish, who noted significant limitation. (R. at 467-68.)

Regarding the postoperative MRI, the plaintiff contends that the ALJ has, in fact, made an impermissible medical interpretation of it. The MRI shows "encroachment on the right side foramen at L4-5 and L5-S1 to a fairly significant degree." (R. at 392-393.) At L3-4, the site of the surgery, there was "generous enhancement in that epidural tissue consistent with fibrosis" which "extends into the left side foramen where the epidural fat looks asymmetric." *Id*. The ALJ viewed these results as inconsistent with the plaintiff's testimony concerning pain. (R. at 23.) But, at least one physician, Dr. Jyoti Math explained that his conclusions as to disabling impairments resulting in part from "lumbar radiculopathy", (R. at 506), were based on, among other things, the "MRI Lumbar Spin – Lumbar DJD, Epidural fibrosis" (R. at 503).

"An ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). As a lay person, an ALJ is "simply not qualified to interpret raw medical data ***in functional terms*** . . . ." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (emphasis added); *see also Manso-Pizarro v. Sec'y of Health & Human Services*, 76 F.3d 15, 17 (1st Cir.1996) (stating that "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record"); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982) ("Because an Administrative Law Judge as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony."). The ALJ was not permitted to interpret the MRI and went too far in citing it as some basis to find the plaintiff incredible.

Essentially, none of the ALJ's reasons for not believing the plaintiff can withstand review. In so many ways they are over- or misstatements of the record, which cannot be affirmed.

12

For numerous deficiencies, the case should be remanded. Whatever new evidence the plaintiff has, which he believes should have been also considered (Pl. Brief at 26), will now necessarily be reviewed then.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is therefore RECOMMENDED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded to the Commissioner under sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

                                        s/BRUCE H. HENDRICKS
                                        UNITED STATES MAGISTRATE JUDGE

January 31, 2013
Charleston, South Carolina